(May 27, 1916.)

## CHARLES B. SMITH and BENJAMIN MOYSES, Appellants, v. J. B. STANFIELD et al., Respondents.

[158 Pac. 239.]

REAL ESTATE—ACTION TO QUIET TITLE—FINDINGS OF FACT—SUFFICIENCY OF EVIDENCE—JUDGMENT MODIFIED.

1. In an action to quiet title to real estate, where the court fails to find upon certain material issues, and to quiet title in the proper parties, the cause will be remanded for further proceedings.

2. *Held*, that the evidence is sufficient to support the finding of facts.

3. Judgment modified and affirmed.

[As to right of holder of equitable title to bring suit to quiet title against holder of legal title, see note in Ann. Cas. 1913B, 89.]

APPEAL from the District Court of the Fourth Judicial District, in and for the County of Elmore. Hon. C. O. Stockslager, Judge.

Action to quiet title to certain real estate. Judgment quieting title in defendants. *Modified and affirmed.*

Cavanah & Blake, for Appellants.

If the village of Mountain Home had the right to use this land for street purposes (which we contend it did not, under the evidence), its right did not commence until it opened the same and used it for street purposes. (*Thiessen v. Lewiston,* 26 Ida. 505, 144 Pac. 548.) The defendant cannot have decreed to him an interest of a third party. (32 Cyc. 1343.)

If the village of Mountain Home has a paramount right to the use of the strip of land for street purposes, as the defendant Stanfield's counsel attempted to establish in the court below, then he was in possession of this land by permission from the village.

"Possession by permission or license from the owner is not adverse and cannot ripen into title, no matter how long continued or however exclusive it may be." (*Omaha & Grant Smelting etc. Co. v. Tabor,* 13 Colo. 41, 16 Am. St. 185, 21 Pac. 925, 5 L. R. A. 236; *Jensen v. Hunter,* 5 Cal. Unrep. 83, 41 Pac. 14; *Davis v. Devanney,* 7 Ida. 742, 65 Pac. 500.)

"Occupation, when in common with the public generally, is not such exclusive possession as will constitute the basis of a title of adverse possession." (*Tracy v. Norwich etc. R. Co.,* 39 Conn. 382; *Gittings v. Moale,* 21 Md. 135; *Boulo v. New Orleans etc. R. Co.,* 55 Ala. 480; *Hittinger v. Eames,* 121 Mass. 539; *Trotter v. Newton,* 30 Gratt. (Va.) 582.)

Where a party recognizes title or paramount interest to be in a third person, his adverse possession ceases to be adverse, no matter how hostile it may previously have been. (*Miller v. Keene,* 5 Watts (Pa.), 348; *Lamb v. Foss,* 21 Me. 240.)

Payment of taxes must be shown in order to establish title by adverse possession. (*Brose v. Boise City Ry. etc. Co.,*

5 Ida. 694, 51 Pac. 753; *Green v. Christie,* 4 Ida. 438, 40 Pac. 54.)

"All transfers and interests in real property must be evidenced by an instrument in writing." (*McGinness v. Stanfield,* 7 Ida. 23–26, 59 Pac. 936; 20 Cyc. 210, and cases cited.)

An unrecorded instrument purporting to convey title is void as to a subsequent purchaser. (*Swank v. Sweetwater Irr. & Power Co.,* 15 Ida. 353, 98 Pac. 297.)

"A grantee succeeds to the estate and occupies the possession of his grantor. He takes subject to the encumbrance, and his title and possession are no more adverse to the mortgagee than was the title in possession of the mortgagor." (2 Jones on Mortgages, sec. 1212; *Chouteau v. Riddle,* 110 Mo. 366, 19 S. W. 814; *Seeley v. Manning,* 37 Wis. 574; *Tucker's Exrs. v. Keeler,* 4 Vt. 161; *Lowry v. Tilleny,* 31 Minn. 500, 18 N. W. 452; *Neilson v. Grignon,* 85 Wis. 550, 55 N. W. 890.)

W. L. Harvey, for Respondent Mary Person Magden.

Sec. 6008, Rev. Codes, exempts from the statute of frauds those agreements where there has been a part performance and those out of which have grown equitable trusts. (*Barton v. Dunlap,* 8 Ida. 82, 66 Pac. 832; *Francis v. Green,* 7 Ida. 668, 65 Pac. 362; *Grice v. Woodworth,* 10 Ida. 459, 109 Am. St. 214, 80 Pac. 912, 69 L. R. A. 584; *Robbins v. Porter,* 12 Ida. 738, 88 Pac. 86; *Morrow v. Matthew,* 10 Ida. 423, 79 Pac. 196.)

Apparent title and a defeasance can be by parol and shown by parol. (*Thompson v. Burns,* 15 Ida. 572, 99 Pac. 111; 1 Jones on Mortgages, 282.)

W. C. Howie, for Respondents Stanfield, Robt. Nichol and Bella Nichol.

The evidence clearly shows that for over seven years before the commencement of this action appellants were not seised or possessed of said property, and that the statute of limitations applies as well to actions to quiet title, even though our statute provides that the action may be brought by one out

of possession. (32 Cyc. 1329–1344; *Bradley v. Johnson,* 11 Ida. 689, 83 Pac. 927; *Bacon v. Rice,* 14 Ida. 107, 93 Pac. 511; *Casserly, v. Alameda County,* 153 Cal. 170, 94 Pac. 765.)

The use of land for a street is merely an easement, a right of way over the land, and is not an ownership of the land, and our statute expressly provides to that effect. (Secs. 3091, 878, Rev. Codes; *Moody v. Palmer,* 50 Cal. 31; *Kittle v. Pfeiffer,* 22 Cal. 484, 485.)

The owner of the abutting land owns the land to the center of the street. (*Webber v. California & Or. R. Co.,* 51 Cal. 425; *Weyl v. Sonoma Valley R. Co.,* 69 Cal. 202, 10 Pac. 510; *Watkins v. Lynch,* 71 Cal. 21, 11 Pac. 808; *Fraser v. Ott,* 95 Cal. 661, 30 Pac. 793; *Coburn v. Ames,* 52 Cal. 385, 28 Am. Rep. 634.)

Adverse possession does not have to be adverse to government ownership, much less to government easements. (*Northern Pac. R. Co. v. Pyle,* 19 Ida. 3, 5, 112 Pac. 678.)

L. B. Green, D. McLaughlin and J. G. Watts, for Other Respondents.

SULLIVAN, C. J.—This is an action brought to quiet title to a large number of distinct and separate tracts of land in the town and in the vicinity of the town of Mountain Home, Elmore county. It is a general suit to quiet title in one action to said tracts of land, each of the answering defendants occupying or claiming a separate tract, and none of the defendants claiming any interest in the tract claimed by any other defendant, except the two defendants Nichol and McDonald. Many of the defendants appeared and answered and others failed to appear and their defaults were entered. The defendants the Sub-Rosa Gymnasium Club and School District No. 6 filed cross-complaints and by stipulation of respective counsel the allegations of those cross-complaints were deemed denied.

Upon a trial of the case the court found that the plaintiffs were the owners in fee of lots 5 and 6 in block D of the town of Mountain Home, and that the defendants were in each

instance, except the defendants Lucille McDonald, John H. Brady and Peter Whitbeck, the owners and entitled to the possession of the land claimed in their separate answer, and judgment was entered accordingly.

The court made no finding of fact and no decree was entered with reference to who was the owner of, and entitled to the possession of, a certain part of the land mentioned and described in plaintiff's complaint. From said judgment and decree this appeal was taken.

Counsel for appellants first take up in their brief the question of the sufficiency of the evidence to support the decree in favor of the defendants. The evidence, among other things, shows that all of the different tracts of land involved in this action were conveyed to the plaintiffs by one Ochsner, deed to which was recorded in said county on February 10, 1909. It also appears that plaintiffs introduced a long chain of record title from patent from the United States government down to the present time, showing the record title in the plaintiffs. It also appears that the plaintiffs have the only record title to all of said lands, running from the patent to the date of the trial. Their evidence shows an unbroken chain of title without conflict or adverse deed. So far as that evidence shows, it appears that the plaintiffs have the legal title. Most of the defendants claimed under adverse user, under an oral contract with some of the predecessors of appellants, and adverse possession. The evidence shows that many of the defendants have had adverse possession of said land for more than five years, and have cultivated and improved it to a certain extent.

The first assignment of error discussed by appellants in their brief is based on the ground that the court failed to find who was the owner or owners of a certain tract of land described by metes and bounds in the 5th paragraph of the complaint, as follows:

"Also commencing at a point forty (40) feet North and four hundred and sixty-three (463) feet west of the Southeast Corner of the Southeast quarter of the Southwest quarter of Section Twenty-five (25) Township Three (3)

South, Range Six (6) East, Boise Meridian, thence running West two hundred three and one-tenth (203.1) feet, thence North two hundred fourteen and five-tenths (214.5) feet, thence East two hundred three and one-tenth (203.1) feet, thence South two hundred fourteen and five-tenths (214.5) feet to the point of beginning.''

The only evidence introduced concerning this tract of land was offered by the plaintiffs, which evidence shows plaintiffs had a complete record chain of title thereto and that it is included in the deed from said Ochsner to the plaintiffs. On that state of facts the court should have found in favor of the plaintiffs, and quieted their title to said tract of land and the decree must be modified to that effect.

It is next contended that the evidence is insufficient to establish the title of the defendant Stanfield to certain lands specifically described in paragraphs 8 and 9 of the court's finding of facts.

The record shows that this tract of land was left for a street, and the defendant in his answer and cross-complaint interposed the defense of five years' possession, and also alleges that he ''is the owner in fee of said premises except for an easement therein of the village of Mountain Home for a street, whenever said village shall require the same for that purpose.''

It is contended that the two defenses, that defendant Stanfield is the owner and that the village of Mountain Home has an easement on said tract for a street, are inconsistent; that title cannot be claimed by reason of adverse possession and at the same time admit the right to possession and paramount title in another; that an easement for a street is a property right and an interest in land, and that if the village of Mountain Home has a property right and interest in said strip of land, then the village is the proper party to claim the same as against the plaintiffs. Counsel contends that the village of Mountain Home evidently does not claim any interest in said strip of land, as it was made one of the defendants in this action and defaulted and laid no claim to said land. The general rule of law is that in an action to quiet

title to real estate one cannot have decreed to him an interest therein when he alleges the title and interest to be in a third party. The evidence does not show that the village had ever opened or attempted to open that tract of land as a street, and it is also contended that no legal dedication or grant has ever been made to the village, and if the plaintiffs purchased it from Ochsner, in whose name the record title stood, they would have a right to assume that he was the owner thereof.

It appears from the record that the Idaho & Oregon Land Improvement Company purchased 420 acres of land and platted about 80 acres of it as the town site of Mountain Home and apparently holding the balance to be platted as the town grew. The land claimed by the defendant Stanfield lies just north of the platted portion of said town and only one block removed from the platted part. A large portion of the platted part of said town was sold by said Improvement Company and also a portion of the unplatted part, but with the exception of an 80 acre tract which was so far removed from the town that it would doubtless never be needed for town purposes, all that said company sold was sold in squares which corresponded to the blocks of Mountain Home, except one tract, which included two blocks. The eighty-foot strips of land left between said blocks were reserved, that is, were not conveyed by the deeds conveying the blocks to the purchasers, and said strips were of the width of the streets of Mountain Home and corresponded with them. In fact, they were evidently intended simply as extensions of the streets of Mountain Home.

Finally, the Land Improvement Company sold all of its holdings to the Mountain Home Canal & Land Company and took a mortgage back for a part of the purchase price. Said mortgage was transferred to Andrew W. Mellen and by him foreclosed in the U. S. district court and the property bought in by Mellen, and he thereafter received a United States marshal's deed for the property covered by said mortgage. Mellen also acquired a tax title to the same property. He held the land for some time and sold off many lots and small

tracts, but when selling such lots that were outside of the platted portion, he followed the same plan, so that the tracts would properly form blocks, reserving between such blocks a strip eighty feet wide for streets.

Among the blocks so sold he conveyed to the defendant Stanfield two blocks, describing them by metes and bounds. Mellen also sold blocks to other persons, and a Mrs. Kelsey held the blocks that she purchased for some time and then conveyed a portion thereof to Stanfield. Mellen, after having sold said blocks of land to defendants Stanfield and Kelsey, sold all of the unsold portion of said lands to the Elmore Irrigated Farms Association, and the only description he gave of the lands conveying it was "all of the lands acquired by me by said marshal's deed and a tax deed," describing the deeds referred to by date, book and page of record, thus referring to them for a description of the land conveyed and excepting therefrom the lands which he had theretofore sold. Said deed contained the following provision: "This conveyance is accepted by the party of the second part with the distinct understanding that it carries the title which the party of the first part now possesses in the condition the same exists at this time, and not otherwise."

The Elmore Irrigated Farms Association gave a mortgage back to Mellen to secure a part of the purchase price of said land, the mortgage describing the land in exactly the same way as it was described in the deed from Mellen to the Farms Association.

Said Farms Association sold some of the lands, Mellen releasing the lands so sold from said mortgage. The Farms Association sold all of said land to John H. Garrett with the same description as was given in the former deeds, excepting that they did not include, but did except from the conveyance, the lands which they had sold theretofore. Garrett in the same manner disposed of some of the lands and sold the residue in the same way and by the same description to the Idaho Beet Sugar Company, and that company conveyed said lands to the Great Western Beet Sugar Company, and by its conveyance, instead of following the old method,

made a quitclaim deed, conveying the whole 480 acres of land originally owned by the Land Improvement Company, making no reservations whatever. The mortgage to Mellen was not paid, and he proceeded to foreclose the same, making every person having claim to the land adverse to him, aside from those purchasing lands that he had theretofore released, parties to the suit. He did not, however, make Stanfield or Kelsey parties, and they were never made parties to said foreclosure action, although they were in the possession of said land at the time of the commencement of said action and for a long time prior thereto, and were holding said land adversely, claiming and using it as their own.

Mellen sold his interest in said mortgage to one Albert Ochsner, who was substituted as plaintiff in said foreclosure proceeding.

The original foreclosure complaint described the lands to be foreclosed similarly to the way it was described in the mortgage, but on demurrer to the complaint being sustained on the ground of the insufficiency of the description of the land, the complaint was amended, describing the acreage tracts by metes and bounds, and the eighty-foot strips referred to as what had been left for streets were for the first time set out and described as being included in the mortgage.

Said mortgage was finally foreclosed and the property bid in by said Ochsner, who then made conveyances of different portions of the land to some of the persons claiming portions of it and conveyed the residue to these appellants. Stanfield and his predecessors were not made parties to that action, and claim that the proceedings in this foreclosure suit does not affect this case.

In 1903 the Great Western Beet Sugar Company acquired title to practically all of the property described in the said Mellen mortgage, subject to said mortgage. Immediately thereafter the sugar company, through James H. Garrett, its agent, began the sale of portions of said land, some on contract and some outright. The said decree of foreclosure provided that the sheriff's sale should be made by parcels,

but for the purpose of protecting those with whom the Great Western Beet Sugar Company had made contracts and to whom they had made deeds, a stipulation was entered into between the attorneys for the sugar company and said Ochsner, by which it was provided that the property described in the decree might be sold in a body instead of in parcels, and that in consideration of said sale being so made, Ochsner should, upon obtaining his sheriff's deed, execute deeds to numerous parties named in the stipulation upon the terms and conditions provided therein. .

Said sale was made in accordance with said stipulation, and there being no redemption, on the 18th of March, 1907, Ochsner received his deed from the sheriff. Thereafter, on December 17, 1908, Ochsner sold and conveyed to the appellants all of the property acquired by him at said foreclosure sale, to which he held title. Said stipulation was evidently made for the purpose of protecting the several respondents to whom land had been sold. The evidence shows that the appellants knew Garrett, or the Great Western Beet Sugar Company, had a contract with Ochsner, and that they purchased Ochsner's rights under said stipulation or contract, and paid Ochsner the balance due. The evidence also shows that shortly after appellants acquired their title from Ochsner they performed certain of the conditions of said stipulation by conveying certain lands theretofore purchased by parties from the Great Western Beet Sugar Company.

The evidence is clear that immediately upon the purchase of the land by Stanfield and Kelsey they inclosed the whole tract of land in one inclosure with a partition fence between them, which inclosure contained several of said eighty-foot strips that were intended for streets. This was done about the year 1901, and ever since said date, up to the commencement of this action, they have used and occupied the land as their own, claiming the same. The division fence between Stanfield and Kelsey ran through the center of one of those eighty-foot strips, each of them having one-half of the strip in his inclosure. Immediately after inclosing the same they began cultivating and using the land, Mrs. Kelsey planting

an orchard and grass on a portion of hers, and Stanfield planting grain and grass on portions of his.

It will not be necessary to go into the facts of the case much further.

It is contended that appellants are not entitled to recover in this action, first, for the reason that they have not been seised or in possession of this land within five years of the commencement of this action, and, second, that the said strips of land which were reserved for streets were reserved purely for street purposes, and that under the law the title to the land thereby vested in the owner of the adjoining land to the center of the street, and since Stanfield owns the land on both sides of the streets, he owns, therefore, to the center of the street from each side and owns the entire tract.

It will not be necessary in this opinion to comment on the authorities cited and relied upon by respective counsel upon this question, since they will be digested and cited in the headnotes to this opinion by the reporter.

Under the facts and law the title to the eighty-foot strips reserved for streets ought not to be quieted in plaintiffs but should be quieted only in Stanfield, as was done, with the reservation of an easement for a street whenever the village desires to open the same. The court therefore did not err in refusing to quiet the title to said strips reserved for streets in plaintiffs, and under the facts and law the defendant Stanfield should have the title thereto so far as said strips are between blocks or lots owned by him; reserving, however, the right or easement thereover to the village for street purposes. Said blocks were sold and purchased with the view of the grantor's making the same accessible by reserving said strips of land as streets, and it is not in the power of the grantor or the appellants, who are its grantees, to deprive Stanfield of the use of the same as streets whenever it may become desirable or necessary so to use them.

It appears that no taxes were paid by Stanfield on said strips left for streets, and it also appears that for the years 1911 and 1912 said strips were assessed to the plaintiffs and they paid taxes thereon. This, in our view of the case, how-

ever, makes no difference, since the plaintiffs could not acquire title or strengthen any title they thought they had to said land by the payment of taxes thereon for those years.

Now as regards the Nichols case: It will not be necessary to go into all of the facts involved in that case, but reference is made to the facts heretofore stated. After considering the testimony applicable to the Nichols land, we are satisfied, under all of the facts, that the trial court did not err in quieting title to such land in Nichols. It appears that the plaintiffs had knowledge of the facts in regard to the purchase of certain lands by some of the defendants through James H. Garrett, who was in control of the Great Western Beet Sugar Company, and the further fact that they were in actual possession of such tracts of land and had put valuable improvements thereon at the time plaintiffs purchased said land; and it further appears from an examination of said deed from Ochsner to the plaintiffs that plaintiffs' attention was called to the fact that they took only such rights as Ochsner had in the land. Nichols had paid part cash for said property, giving his note secured by a mortgage for the balance, which note and mortgage were disposed of by the Great Western Beet Sugar Company, and so far as that company and the plaintiffs are concerned, the purchase price for said blocks has been fully paid. Under the facts and the law, the judgment of the court will be affirmed so far as Nichols is concerned.

Now as regards Mrs. Antone Egge's case: The stipulation heretofore referred to was one made between the sugar company and Ochsner for the sole purpose of protecting the defendants, to whom lots or blocks had been sold. Under the provisions of said stipulation, Antone Egge was to receive a deed from Ochsner without further payment. He thereafter died and Mrs. Antone Egge succeeded to his rights in said matter. Egge had paid in full for said land. Ochsner was certainly bound by the provisions of said stipulation. Garrett testified that appellants knew that he or the sugar company had a contract with Ochsner and that the plaintiffs purchased his rights under said contract and paid Ochsner

the balance due. Under all of the facts of this case, we think the court did not err in quieting the title to said land to the defendant Egge.

We have examined the other errors assigned by appellant as to the sufficiency of the evidence to support the findings of the court, and we are satisfied that the evidence is sufficient to support the findings, and that there is no merit in the other assignments of error.

For the reasons above stated, the decision of the trial court will be modified and remanded, with directions to make findings of fact in favor of the plaintiffs so far as that certain tract of land described by metes and bounds in the 5th paragraph of the complaint and heretofore set forth in this opinion is concerned, and enter a decree quieting their title to that tract of land; otherwise the judgment and decree of the district court will be affirmed, and it is adjudged that each of the parties shall pay his own costs on this appeal.

Budge and Morgan, JJ., concur.

(June 21, 1916.)

ON PETITION FOR REHEARING.

SULLIVAN, C. J.—A petition for rehearing has been filed in this case, and the only point raised is that the court overlooked the contention of appellants to the effect that the trial court failed to quiet the title to lot 19 in block 14 of south addition to Mountain Home in appellants. This contention is based on the fact that that lot was claimed by appellants in their complaint, and on the trial there was no evidence introduced that questioned the title of appellants to said lot.

Upon a re-examination of the matter, we find that there is merit in appellants' contention, and that the trial court ought to have quieted the title to said lot in appellants. Therefore, in addition to the modification directed in the original opinion, the trial court will make findings of fact in favor of appellants so far as said lot 19 in block 14 of south

addition to Mountain Home is concerned, and enter a decree quieting appellants' title to said lot. With that addition or amendment to the original decision of this court, the judgment and decree of the district court will be affirmed, and it is so ordered.

Budge and Morgan, JJ., concur.